IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| UNITED STATES OF AMERICA | ) | Criminal No.: 4:15-cr-*11-CDL* |
|---|---|---|
| | ) | |
| | ) | Count One: 18 U.S.C. § 371 |
| v. | ) | (Conspiracy to Commit Bribery) |
| | ) | |
| | ) | Count Two: 18 U.S.C. § 201 |
| ANTHONY DON TRAN | ) | (Bribery of a Public Official) |
| | ) | |
| | ) | and Criminal Forfeiture |
| | ) | |
| Defendant. | ) | |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

1. Unless stated otherwise, the "relevant period" for purposes of this Indictment is from in or about October 2012 through in or about May 2013.

### COUNT ONE
(18 U.S.C. § 371 – Conspiracy to Commit Bribery)

#### INDIVIDUALS INVOLVED

2. During the relevant period the defendant, ANTHONY DON TRAN, was deployed as a specialist with the United States Army 626th Brigade Support Battalion ("626 BSB"), out of Fort Campbell, Kentucky. 626 BSB was stationed at Forward Operating Base Gardez ("FOB Gardez") in Gardez, Afghanistan. During his deployment, TRAN worked in the bulk fuel download yard at FOB Gardez. Among other responsibilities, TRAN was responsible for escorting fuel trucks to large fuel bladders in the download yard, downloading the fuel from the tanker into the bladder, and recording the total quantity of fuel downloaded.

3. Over the relevant period, Seneca Hampton was deployed as a sergeant with 626 BSB. Hampton was the noncommissioned officer in charge of the forward area refueling point at FOB Gardez. Hampton was responsible for maintaining accountability for all of the incoming and outgoing fuel at FOB Gardez each day.

4. Over the relevant period James Norris was a sergeant first class with 626 BSB. Norris was the platoon sergeant at FOB Gardez and was responsible for supervising the operations of the platoon, including the fuel operations.

5. Over the relevant period Public Official C was a specialist with 626 BSB and worked with TRAN in the area for bulk fuel downloads.

6. Over the relevant period local Afghan truck drivers frequently drove onto FOB Gardez to provide bulk fuel, sewage services, and to refuel generators and other equipment at the base.

7. Hampton's last known residence is Fort Benning, Georgia, within the Middle District of Georgia.

### FORWARD AREA REFUELING POINT

8. The forward area refueling point at FOB Gardez was made up of three primary fuel areas: an area for bulk fuel downloads; an area for fuel dispersal for helicopters, generators, and base equipment; and a "MoGas" area that functioned as a retail or commercial filling station. The bulk fuel download yard was separated from the rest of the forward area refueling point by a mortar wall. TRAN and Public Official C primarily worked in the bulk fuel download yard. Hampton primarily worked in the area for fuel dispersal and in the MoGas area. Norris worked in a supervisory role and oversaw all three areas.

## THE CONSPIRACY

9. Between in or about December 2012 and in or about May 2013, in Afghanistan, the defendant, ANTHONY DON TRAN, did knowingly combine, conspire, confederate, and agree with Hampton, Norris, and Public Official C to commit an offense against the United States, to wit:

> being public officials, directly and indirectly, to corruptly demand, seek, receive, accept, and agree to receive and accept anything of value personally and for any other person and entity, with the intent to be influenced in the performance of an official act and to be influenced to commit and aid in committing, and to collude in, and allow, a fraud, and make opportunity for the commission of a fraud, on the United States, and to be induced to do or omit to do any act in violation of their official duties; that is, TRAN, Hampton, Norris, and Public Official C solicited and received United States currency in exchange for permitting local Afghan National truck drivers to take fuel from FOB Gardez without authorization and to fail to download fuel designated for FOB Gardez, resulting in fuel losses to the United States government, in violation of 18 U.S.C. § 201(b)(2)(A),(B), & (C).

## THE PURPOSE OF THE CONSPIRACY

10. It was a purpose of the conspiracy for TRAN, Hampton, Norris, and Public Official C to unjustly and unlawfully enrich themselves through corrupt means, namely, by accepting cash from local Afghan truck drivers in exchange for allowing the drivers to take fuel from FOB Gardez without authorization and to fail to download fuel designated for FOB Gardez.

## THE MANNER AND MEANS OF THE CONSPIRACY

11. In furtherance of the conspiracy:

12. TRAN, Norris, Hampton, and Public Official C regularly solicited and accepted cash from Afghan truck drivers in exchange for allowing the drivers to take fuel from FOB Gardez.

13. TRAN manipulated fuel records to conceal the illicit dispersals.

14. Hampton falsely reported excess fuel as being dispersed for refueling generators and equipment on base, when in actuality the excess fuel was being provided illegitimately to local Afghan drivers for resale. Hampton falsely attributed the full increase in fuel usage to colder winter temperatures.

15. TRAN, Norris, Hampton, and Public Official C collected cash from drivers and mailed cash home in tough boxes so that they could access the money upon their return from deployment.

16. TRAN, Hampton, and Public Official C discussed the vehicles that they planned to purchase with the proceeds of the bribery scheme upon their return from deployment. When they did return to the United States TRAN purchased a 2010 Dodge Challenger as planned with $19,000 cash; Hampton purchased a 2013 GMC Sierra as planned with $29,000 cash; Norris purchased a 2008 Cadillac Escalade as planned with $31,879 cash; and Public Official C purchased a 2010 Chevrolet Camaro as planned but financed the purchase of the vehicle.

## OVERT ACTS

17. In furtherance of the conspiracy and to accomplish its unlawful objects, TRAN, Hampton, Norris, and Public Official C performed and caused to be performed the following overt acts, among others, in Afghanistan:

    a. Between in or about January 2013 and in or about May 2013 TRAN, Hampton, Norris, and Public Official C solicited and received, directly or indirectly, cash bribes from local Afghan truck drivers in exchange for allowing them to steal fuel that was either present at FOB Gardez or designated for FOB Gardez;

4

b. On or about January 26, 2013, TRAN falsely reported that a fuel delivery truck downloaded approximately 13,000 gallons of fuel to FOB Gardez when in fact TRAN and Public Official C permitted the truck to leave FOB Gardez without downloading any of the fuel designated for FOB Gardez, in exchange for $20,000.

**(All in violation of Title 18, United States Code, Section 371 and pursuant to the extraterritorial venue provision, Title 18, United States Code, Section 3238)**

## COUNT TWO
(18 U.S.C. § 201(b)(2) – Bribery of a Public Official)

18. Paragraphs 1-8 above are re-alleged and incorporated by reference as if set forth fully herein.

19. From in or about January 2013 until in or about May 2013, in Afghanistan, the defendant, ANTHONY DON TRAN, being a public official, did directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept anything of value personally and for any other person and entity, with the intent to be influenced in the performance of an official act and to be influenced to commit and aid in committing, and to collude in, and allow, a fraud, and make opportunity for the commission of a fraud, on the United States, and to be induced to do or omit to do any act in violation of his official duties; that is, TRAN solicited and received money, in exchange for permitting local Afghan National truck drivers to take fuel from FOB Gardez without authorization and to fail to download fuel designated for FOB Gardez, resulting in fuel losses to the United States government.

**(All in violation of 18 U.S.C. § 201(b)(2)(A),(B), & (C) and pursuant to the extraterritorial venue provision, Title 18, United States Code, Section 3238)**

## NOTICE AS TO CRIMINAL FORFEITURE
(18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461 – Criminal Forfeiture)

20.   The allegations contained in Counts 1 and 2 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and 26 U.S.C. § 2641.

21.   Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the defendant, ANTHONY DON TRAN, once convicted of Counts One and Two (conspiracy to commit bribery, in violation of 18 U.S.C. § 371, and bribery of a public official, in violation of 18 U.S.C. § 201(b)(2)) shall forfeit to the United States any property real or personal constituting or derived from proceeds traceable to such violation, including but not limited to a forfeiture money judgment in the amount of $10,000 and a 2010 Dodge Challenger bearing VIN No. 2B3CJ4DV7AH265276.

22.   If any of the property described above, as a result of any act or omission of the defendant:

   a.   cannot be located upon the exercise of due diligence;

   b.   has been transferred or sold to, or deposited with, a third party;

   c.   has been placed beyond the jurisdiction of the court;

   d.   has been substantially diminished in value; or

   e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL.

_____
FOREPERSON OF THE GRAND JURY


Presented by:

RAYMOND HULSER
Acting Chief, Public Integrity Section

MICHAEL J. MOORE
United States Attorney
Middle District of Georgia

_____
JOHN KELLER
Trial Attorney
United States Department of Justice
Public Integrity Section
1400 New York Ave. NW, Suite 12100
Washington, DC  20005
(202) 514-1412
John.Keller2@usdoj.gov

Filed this 10th day of March, 2015

_____
Clerk